NORTH BANK, a Michigan Corporation, Plaintiff–Appellant,

v.

The CINCINNATI INSURANCE COMPANIES, Defendant–Appellee.

No. 96–1714.

United States Court of Appeals, Sixth Circuit.

Argued July 28, 1997.

Decided Oct. 1, 1997.

Lawrence P. Hanson (argued and briefed), Bodman, Longley & Dahling, Cheboygan, MI, Michael J. Laramie (briefed), Bodman, Longley & Dahling, Detroit, MI, for Plaintiff–Appellant.

J. Steven Johnston (argued and briefed), Bigler, Berry, Johnston, Sztykiel & Hunt, Troy, MI, for Defendant–Appellee.

Before: MERRITT, BOGGS, and DAUGHTREY, Circuit Judges.

## OPINION

MERRITT, Circuit Judge.

The plaintiff, North Bank, brought this diversity action to require that the defendant, Cincinnati Insurance Companies, pay for the defense and settlement of an employment discrimination case filed against the bank. The provisions of the policy at issue expressly cover "discrimination" claims and a number of other intentional torts. The in-

surance company argues, however, that the particular employee discrimination suit was not covered by the policy because the policy excludes coverage for all "intentional discrimination." The District Court granted summary judgment for the defendant, finding that the policy did not require it to defend the plaintiff against the employee's discrimination suit. We reverse, concluding that the policy is ambiguous and should be read to include the discrimination claim in question.

## I

The bank, as the "named insured," purchased a policy from the defendant from 1989 to 1992 at an annual premium cost of $25,013, together with an umbrella liability policy for an additional premium of $2,041. The policies were renewed in October of 1992 with premium increases of just over $5,000.

The defendant refused to defend an action filed by Elite Shellenbarger against North Bank and its President, Gene Kinter, for damages resulting from the termination of his employment with the bank on August 31, 1991. The Shellenbarger complaint contained four counts: age discrimination under the Michigan Elliott–Larsen Civil Rights Act; discrimination for the handicap of depression and anxiety under the Michigan Handicapper's Civil Rights Act; violation of a legitimate expectation of continuing employment after defendants asked Shellenbarger to seek counseling and take a 90 day leave; and failure to deal in good faith with a 20 year employee by firing Shellenbarger after he complied with the defendants' requests. The complaint also alleged loss of consortium claims by Shellenbarger's wife.

The state court dismissed all the claims against the bank President and also dismissed many of the claims against the bank—the claims based on age discrimination under the Michigan Elliott–Larsen Act, Violation of Expectations, and Duty of Good Faith and Fair Dealing. The only remaining claims were for handicap discrimination and loss of consortium. The bank settled the claims for $110,000 for mental and emotional injury, and paid attorney's fees of $75,341.06 for its defense. The defendant declined to indemnify the bank for this loss under the policy.

The bank argues that the umbrella policy covers the defense of the Shellenbarger action because the policy covers the defense of "occurrences" which result in "personal injury." "Personal injury" is defined ambiguously to include "discrimination" but not "discrimination committed by or at the direction" of the bank. The relevant portions of the policy are quoted in the accompanying footnote.[1]

In granting the defendant insurance company's motion for summary judgment, the District Court explained that the insurance policy only covered an "occurrence" which unexpectedly or unintentionally resulted in "personal injury," and the Court determined that the Shellenbarger complaint alleged that North Bank had intentionally discriminated against Mr. Shellenbarger. The District Court also cited the policy provision which excluded coverage for personal injury arising

---

1.  The Umbrella Policy says:
    A. **"You"**, **"your"** and **"yours"** mean a person or organization shown as the Named Insured in the declarations;

    . . .

    G. **"occurrence"** means an accident, or a happening or event . . . which unexpectedly or unintentionally results in **personal injury** . . . .
    H. **Personal Injury** means:
    (1) Bodily harm or injury, sickness, disease, disability, shock, fright, mental anguish or mental injury including care, loss of services or death arising out of these:
    (2) False arrest, false imprisonment or detention; wrongful eviction, wrongful entry, wrongful determination or malicious prosecution;

    (3) Discrimination or humiliation;
    (4) Libel, slander or defamation of character, invasion of private occupancy or invasion of rights of privacy;
    (5) Assault and battery by an **Insured** but only if committed to protect persons or property; except that for which coverage is afforded under **Advertising Liability** . . . .
    This policy does not apply:

    . . .

    (h) to any liability for **Personal Injury** arising out of discrimination including fines or penalties imposed by law, if (1) insurance coverage therefor is prohibited by law or statute, or (2) committed by or at **your** direction.

out of discrimination "committed by or at your direction," and determined that the discrimination alleged in the Shellenbarger complaint was committed by or at the direction of North Bank.

## II

Under Michigan law, the defendant had a clear duty to defend the Shellenbarger suit until all possible theories of recovery which could be covered by the umbrella policy were eliminated. *Detroit Edison Co. v. Michigan Mut. Ins. Co.*, 102 Mich.App. 136, 301 N.W.2d 832, 835 (1980). The duty to defend is not limited by the language of the complaint. *Pattison v. Employers Reinsurance Corp.*, 900 F.2d 986, 988 (6th Cir.1990). Rather, the insurer must look beyond the allegations to determine whether coverage is possible. *Id.* The duty to defend extends to allegations which are groundless, false or fraudulent. *Detroit Edison Co.*, 301 N.W.2d at 835. If there is doubt regarding whether the insurer has the duty to defend, the doubt must be resolved in favor of the policy holder. *Id.* If an insurer wrongfully declines to defend, the insurer is liable for the costs of defense as well as any reasonable, good faith settlement paid by the insured. *Id.* at 836.

We must look to the terms of the umbrella policy to determine whether the insurance company had a duty to defend the bank in the Shellenbarger suit. The policy states that it covers "occurrences," which are defined as events "which unexpectedly or unintentionally result[ ] in personal injury." Under the policy, "personal injury" includes "discrimination." The policy excludes coverage for "discrimination committed by or at your direction." The term "your" is defined as the named insured, which in this case is the bank.

The umbrella policy purports to cover "discrimination," but the exclusion is sufficiently ambiguous that it allows the defendant to argue that the policy does not provide coverage for most discrimination cases because they normally arise from claims of intentional discrimination. The company seeks to have us adopt a narrow view of its coverage. If the alleged discrimination was *intentional,* then the insurance company argues that the

definition of "occurrence" ("unexpectedly or unintentionally results in personal injury") precludes coverage because an "occurrence" only includes unintentional discrimination. If the alleged discrimination was unintentional, the defendant then argues that the discrimination was not covered because it was committed at the direction of the named insured. *See Town of S. Whitley v. Cincinnati Ins. Co.*, 724 F.Supp. 599, 604 (N.D.Ind. 1989), *aff'd* 921 F.2d 104 (7th Cir.1990) (Cincinnati Insurance Companies argued that both intentional and unintentional discrimination by the Town of South Whitley was excluded from insurance coverage under the provision excluding discrimination committed "by or at your direction").

The umbrella policy contains a studied ambiguity written into the policy by the defendant. Under Michigan law, ambiguous insurance policy provisions are to be construed against the drafter and in favor of coverage. *Fire Ins. Exchange v. Diehl,* 450 Mich. 678, 545 N.W.2d 602, 606 (1996). In addition, exclusionary clauses in insurance policies are strictly construed against the insurer. *Id.*

We reject the defendant's argument that the policy covers only unintentional torts because of the ambiguity created when the policy is read as a whole. The policy covers "occurrences," defined as events which "unexpectedly or unintentionally result[ ] in personal injury." Then the policy defines "personal injury" to include a number of torts which are inherently intentional. These torts include: false arrest, false imprisonment, detention, malicious prosecution, humiliation, libel, slander, defamation of character, invasion of privacy, assault and battery, as well as discrimination. We agree with the Seventh Circuit that "the definition of personal injury which includes intentional torts and the definition of 'occurrence' which excludes intentional torts" are inconsistent and create an ambiguity. *Hurst–Rosche Eng'rs, Inc. v. Commercial Union Ins.*, 51 F.3d 1336, 1345 (7th Cir.1995). Other courts reviewing insurance policies similar to the one before us have also concluded that the provisions of the policies are internally inconsistent be-

cause they appear to provide coverage for "unintentional" "intentional" torts. *See Missouri Property and Cas. Ins. Guar. Ass'n. v. Petrolite Corp.*, 918 S.W.2d 869 (Mo.Ct.App. 1996) (discrimination); *Davidson v. Cincinnati Ins. Co.*, 572 N.E.2d 502 (Ind.Ct.App. 1991) (malicious prosecution and slander); *Hurst–Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336 (7th Cir.1995) (libel and tortious interference with contract); *Lineberry v. State Farm Fire & Cas. Co.*, 885 F.Supp. 1095 (M.D.Tenn.1995) (invasion of privacy); *Lincoln Nat'l Health and Cas. Ins. Co. v. Brown*, 782 F.Supp. 110 (M.D.Ga.1992) (malicious prosecution, false arrest, and assault and battery). In selling the policies, the insurance company uses these conflicting provisions to "create the impression that the policy provides coverage for an employer's intentional employment discrimination," but when an insured attempts to claim coverage the insurance company argues that the discrimination is not actually covered by the policy. Sean W. Gallagher, *The Public Policy Exclusion and Insurance for Intentional Employment Discrimination*, 92 Mich. L.Rev. 1256, 1296 n. 173 (1994). The ambiguity in the policy must be resolved in favor of the insured. *Fire Ins. Exchange v. Diehl*, 545 N.W.2d at 606. Thus, we conclude that the policy's definition of "occurrence" does not preclude coverage of the Shellenbarger discrimination claim.

The defendant insurance company argues in the alternative that its policy does not cover the defense of the Shellenbarger action because the policy excludes coverage for "any liability for **Personal Injury** arising out of discrimination ... committed by or at **your** direction." "Your" is specifically defined in the policy as the "named insured," the bank. Courts have interpreted this coverage provision as excluding claims of intentional discrimination by the named insured. *Hyde Spring & Wire Co., Inc. v. Cincinnati Ins. Co.*, No. 95–72848, slip op. at 10 (E.D.Mich.1996) (same provision was held to "expressly exclud[e] coverage for intentional discrimination"); *Clark–Peterson Co., Inc. v. Independent Ins. Assoc., Ltd.*, 492 N.W.2d 675, 678 n. 8 (Iowa 1992) (same provision was held "to exclude coverage for intentional discrimination"); *Town of S. Whitley v. Cincin-*

*nati Ins. Co.*, 921 F.2d at 107 (same provision was held to exclude coverage "for actions resulting from deliberate discriminatory conduct"). The insurance company argues that the discrimination was committed by the bank because the Board of Directors participated in Shellenbarger's termination. But the Shellenbarger complaint does not allege, and there is no evidence, that the Board knew about any intentional discrimination.

■■■ The bank reasonably expected that the Shellenbarger discrimination claim would be covered by the umbrella policy. The bank paid a significant annual premium in order to purchase insurance coverage for the defense of certain claims, and "discrimination"—normally an intentional tort—was among these claims. The defendant insurance company now attempts to retract almost all that coverage by arguing that the policy eliminates coverage of intentional discrimination through its definition of "occurrence" and eliminates coverage of both intentional and unintentional discrimination if the discrimination is committed by the named insured. Under the doctrine of reasonable expectations, a "court grants coverage under the policy if 'the policyholder, upon reading the contract language is led to a reasonable expectation of coverage.'" *Fire Ins. Exchange v. Diehl*, 545 N.W.2d at 606 (quoting *Powers v. DAIIE*, 427 Mich. 602, 398 N.W.2d 411 (1986)). In both *Hyde Spring & Wire Co., Inc. v. Cincinnati Ins. Co.*, No. 95–72848 (E.D.Mich.1996) and *Clark–Peterson Co., Inc. v. Independent Ins. Assoc., Ltd.*, 492 N.W.2d 675 (Iowa 1992), the courts were faced with policies similar to the policy in our case. Both courts determined that the reasonable expectations of the parties required the insurance companies to cover the discrimination claims. Similarly, we are persuaded that the defendant insurance company should not be permitted to sell the bank a policy covering discrimination claims and then to refuse to cover garden variety discrimination claims like the Shellenbarger case.

We recognize that there are contrary cases in other states and other circuits. Specifically, the insurance company relies heavily on three cases. *City of Muncie v. United Nat'l*

*Ins. Co.*, 564 N.E.2d 979 (Ind.Ct.App.1991) (intentional discrimination not covered by similar policy); *Monsler v. Cincinnati Cas. Co.*, 74 Ohio App.3d 321, 598 N.E.2d 1203 (1991) (intentional discrimination in the sale of property not covered by similar policy); *Town of S. Whitley v. Cincinnati Ins. Co.*, 921 F.2d 104, 108 (7th Cir.1990) (coverage denied "to the extent that the alleged acts under the Eldridge suit assert intentional discriminatory acts committed by the Board of Trustees of South Whitley"). These courts did not consider the ambiguity arguments fully or the fact that the insurance company drafted the policy in an ambiguous way so that it could argue no coverage of most discrimination claims.

At one time, public policy would have prevented an insurance company from providing insurance defense coverage for intentional acts. "In numerous judicial opinions it has been said, ... that insurance against liability resulting from a *willful* act of the insured would be against public policy and void." Edwin W. Patterson, *Essentials of Insurance Law* § 58, at 264 (1957). Patterson explained that "it is implied in every insurance contract that the insured event is a fortuitous one." *Id.* at 257. Courts began voiding insurance coverage on public policy grounds in cases of first-party insurance to prevent individuals from collecting insurance for losses over which they had control. Sean W. Gallagher, *The Public Policy Exclusion and Insurance for Intentional Employment Discrimination*, 92 Mich. L.Rev. 1256, 1264 (1994). Thus, for example, insurance coverage would be denied to an insured who set fire to his own house or to a beneficiary of a life insurance policy who murdered the named insured. *Id.* at 1264–65. Among the rationales for the public policy is the principle that an insured should not profit from his own wrongdoing. *Id.* Another important rationale is to prevent wrongful conduct which may be more likely to occur because the activity is covered by insurance. *Id.* at 1266. Some states have gone as far as codifying the public policy exclusion. James M. Fischer, *The Exclusion From Insurance Coverage Of Losses Caused By The Intentional Acts of the Insured: A Policy In Search Of A Justi-* *fication*, 30 Santa Clara L.Rev. 95, 113 (1990) (citing Cal. Ins.Code § 533).

■ As a result of the litigation explosion of the last forty years, "some courts have simply abandoned the public policy exclusion and enforced insurance to cover compensatory and even punitive damages that result from intentional wrongdoing." Gallagher, *supra*, at 1272. The courts have permitted this change because other deterrents keep potential tortfeasors, particularly businesses, from committing intentional acts. These deterrents include the risk of hefty premiums and bad publicity for businesses facing law suits. Eve M. Coddon, *Finding Coverage Where There Is Coverage: Enforcing Promises To Insure Intentional Torts*, 6 No. 1 Coverage 34, 35 (1996). It may be in the public interest to allow businesses to purchase insurance coverage against discrimination, sexual harassment, and other similar claims rather than for those businesses to become bankrupt defending such claims. Francis J. Mootz, *Principles of Insurance Coverage: A Guide For The Employment Lawyer*, 18 W. New Eng. L.Rev. 5, 38 (1996). Our Court has observed that "common sense suggests that the prospect of escalating insurance costs and the trauma of litigation, to say nothing of the risk of uninsurable punitive damages, would normally neutralize any stimulative tendency the insurance might have." *School District for the City Of Royal Oak v. Continental Cas. Co.*, 912 F.2d 844, 848 (6th Cir.1990), *overruled on other grounds* by *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). In that case, our Circuit explicitly held that under Michigan law, public policy does not bar the enforcement of a liability insurance policy covering an allegedly intentional civil rights violation. Thus, the public policy of Michigan does not prevent the insurance coverage in this case and requires that the ambiguity created by the insurance company in drafting its policy be resolved in favor of the insured.

### III

We therefore REVERSE the decision of the District Court and conclude that defendant, Cincinnati Insurance Companies, was

obligated to defend North Bank in the Shellenbarger discrimination action. We remand the case to the District Court for the determination of damages.